**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION

11 JUN -3 AM 9: 20

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

| | |
|---|---|
| WAYNE E. BILLINGS, ) | Case No. _____ |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | **1 : 11 -cv- 0 7 4 8 TWP -DML** |
| CHIEF OF POLICE PAUL R. ) | |
| CIESIELSKI, in his official capacity, ) | |
| DEPUTY CHIEF WILLIAM BENJAMIN, ) | |
| in his official and individual capacities, ) | |
| MAJOR CHISTOPHER BOOMERSHINE, ) | |
| in his official and individual capacities, ) | |
| SERGEANT DAVID C. STAMPER, ) | |
| in his official and individual capacities, ) | |
| DETECTIVE OCTAVIA DONALDSON, ) | |
| in her official capacity, ) | |
| OFFICER SUSAN HORAN, ) | |
| in her official capacity, ) | |
| DETECTIVE MARY HORTY, ) | |
| in her official capacity, ) | |
| AND OTHER UNKNOWN OFFICERS ) | |
| AND PERSONNEL OF THE ) | |
| INDIANAPOLIS METROPOLITAN ) | |
| POLICE DEPARTMENT, in their official ) | |
| capacities, and the INDIANAPOLIS ) | |
| METROPOLITAN POLICE ) | |
| DEPARTMENT, a political subdivision ) | |
| of Indianapolis, Indiana. ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL**

Comes Now, Plaintiff, Wayne E. Billings ("Plaintiff"), by counsel, and in support of his

Complaint for Damages and Demand for Jury Trial states the following:

## JURISDICTION AND VENUE

1.      This action arises under the Constitution of the United States, particularly the Fourth, Sixth and Fourteenth Amendments to the Constitution of the United States, and under the laws of the United States, particularly the Civil Rights Act, Title 42 of the United States Code, Sections 1983 and 1988.

2.      The jurisdiction of this Court is invoked under the provisions of Title 28 of the United States Code, Sections 1331 and 1343.

3.      Venue is placed in this District because it is where all parties reside and/or where all parties were employed when the events transpired, and further, it is where all acts of Defendants complained of by Plaintiff occurred.

## PARTIES

4.      Plaintiff incorporates by reference the preceding rhetorical paragraphs numbered 1 through 3 above, as if fully restated herein.

5.      Plaintiff is and has been at all times relevant to this Complaint a resident of Marion County, Indiana.

6.      Defendant, Indianapolis Metropolitan Police Department (hereinafter referred to as "IMPD"), is a political subdivision of Marion County, Indiana and performs its primary business in Marion County, Indiana.

7.      Defendant, Chief of Police Paul R. Ciesielski (hereinafter referred to as "Chief Ciesielski"), is and was the duly appointed Chief of Police of IMPD at all relevant times to the complaint.

8.    Defendant, Deputy Chief William Benjamin (hereinafter referred to as "Deputy Chief Benjamin") is and/or was at all relevant times to this Complaint an agent/employee and/or acting officer of IMPD. Deputy Chief Benjamin is named herein in both his official and individual capacities.

9.    Defendant, Major Christopher Boomershine (hereinafter referred to as "Major Boomershine"), is and/or was at all relevant times to this Complaint an agent/employee and/or acting officer of IMPD. Major Boomershine is named herein in both his official and individual capacities.

10.    Defendant, Sergeant David C. Stamper (hereinafter referred to as "Sgt. Stamper) is and/or was at all relevant times to this Complaint an agent/employee and/or acting officer of IMPD. Sgt. Stamper is named herein in both his official and individual capacities.

11.    Defendant, Officer Susan Horan is and/or was at all relevant times to this Complaint an agent/employee and/or acting officer of IMPD.

12.    Defendant, Detective Octavia Donaldson, is and/or was at all relevant times to this Complaint an agent/employee and/or acting officer of IMPD.

13.    Defendant, Detective Mary Horty is and/or was at all relevant times to this Complaint an agent/employee and/or acting officer of IMPD.

14.    Other unknown officers, personnel and staff at IMPD are or were at all relevant times to this Complaint agents/employees and/or acting officers of IMPD (hereinafter referred to collectively as "IMPD personnel").

15.    Plaintiff has complied with the Notice of Tort Claim for Personal Injury or Property Damage under Indiana Code 34-13-3 *et seq.* Plaintiff provided a Notice of Tort Claim for Personal

3

Injury or Property Damage to the following governmental subdivisions:  IMPD, the Consolidated City of Indianapolis, the City of Indianapolis and the Indiana Political Subdivision Risk Management Commission on or about December 8, 2010 and at least ninety (90) days have passed since that time.  These Defendants did not respond to the Notice of Tort Claim within ninety (90) days.  Therefore, Plaintiff's Notice, pursuant to law, is deemed denied in whole by each of these Defendants.

**FACTS**

16.     Plaintiff incorporates by reference the preceding rhetorical paragraphs numbered 1 through 15 above, as if fully restated herein.

17.     In the several months previous to August 17, 2010, Plaintiff, a Master Trooper Detective and 30-year veteran with the Indiana State Police (hereinafter referred to as "ISP") received multiple telephone calls on his cell phone and at his home, which were different than the normal and ordinary calls he received on a daily basis.

18.     Specifically, an unidentified caller left voicemail messages on Plaintiff's phone using an electronic device to distort and hide his voice.

19.     The unidentified caller made verbal threats to Plaintiff, stating Plaintiff should "watch his back" and that the unidentified caller was watching Plaintiff or could find him.

20.     The unidentified caller indicated that the Plaintiff's relationship with a woman named Donna Rice was a problem.

21.     On August 16, 2010, Plaintiff met with Ms. Rice about the threatening phone calls to his home and cell phone.

22. During the conversation, Ms. Rice informed Plaintiff that the caller was Deputy Chief Benjamin, with whom Ms. Rice had a personal relationship.

23. On August 17, 2010, Ms. Rice called Plaintiff and informed him that Deputy Chief Benjamin wanted to speak with him.

24. The Plaintiff, while on his way to an official appointment at the Indiana Department of Corrections in the afternoon of August 17, 2010, went to the City-County Building located in Indianapolis, Marion County, Indiana to speak with Deputy Chief Benjamin based on his belief that Deputy Chief Benjamin wanted to speak with him.

25. Prior to entering the City-County Building, Plaintiff activated a small digital recording device, which he placed in his pocket so that he could record any threatening comments from Deputy Chief Benjamin.

26. Plaintiff entered the City-County Building using his official ISP-issued identification, which included a badge and photograph identification.

27. Plaintiff asked a City-County Building employee the location of Deputy Chief Benjamin's office. The employee gave Plaintiff the location and informed him that access to the office was a restricted area.

28. The City-County Building employee asked Plaintiff if he was law enforcement to which Plaintiff answered "Yes". The City-County Building employee informed Plaintiff that the office was for law enforcement only.

29. When Plaintiff arrived at Deputy Chief Benjamin's office, Deputy Chief Benjamin immediately invited Plaintiff into his office.

30.     As Plaintiff entered the office, Deputy Chief instructed a member of his staff to notify him if "Straub" called, and that he would step out of his office to speak with "Straub."

31.     Deputy Chief Benjamin closed the door to his office and sat across from Plaintiff.

32.     Plaintiff inquired if Deputy Chief Benjamin knew him and stated that Deputy Chief Benjamin wanted to speak with him.

33.     Plaintiff identified himself as "Detective Wayne Billings." The Deputy Chief Benjamin asked Plaintiff at which agency Plaintiff was with a detective and Plaintiff responded: "State Police."

34.     Plaintiff informed Deputy Chief Benjamin that he was there at the request of Deputy Chief Benjamin.

35.     Plaintiff told Deputy Chief Benjamin that he, Deputy Chief Benjamin, made several calls to Plaintiff's house and cell phone.

36.     Deputy Chief Benjamin denied knowing or calling Plaintiff.  However, when Plaintiff mentioned a woman named, "Donna Rice", Deputy Chief Benjamin admitted to Plaintiff: "Now I know who you are."

37.     Deputy Chief Benjamin again denied calling Plaintiff.

38.     Plaintiff then apologized to Deputy Chief Benjamin and stated that he must have identified the wrong person making the calls.

39.     Deputy Chief Benjamin suddenly became defensive and began talking about his family, long-term marriage and vouching for his own character.

40.     Plaintiff responded again that he must have identified the wrong person as the caller.

41.     Plaintiff then attempted to exit Deputy Chief Benjamin's office, stating that he needed to leave for an official appointment.

42.     As Plaintiff attempted to exit, Deputy Chief Benjamin raised his voice and commanded "you don't have to go now… now we're going… we can switch gears."

43.     Although Deputy Chief Benjamin acknowledged that Plaintiff was a detective with ISP, he asked to see Plaintiff's identification.

44.     When Plaintiff showed his official ISP identification to Deputy Chief Benjamin he attempted to take possession of Plaintiff's identification.

45.     Again, Plaintiff attempted to leave the office, but Deputy Chief Benjamin forcibly grabbed and restrained Plaintiff and yelled for Major Boomershine.

46.     Deputy Chief Benjamin forcibly took Plaintiff's official ISP identification as Major Boomershine rushed toward Plaintiff with his gun drawn and pointed at Plaintiff.

47.     Using profanity, Deputy Chief Benjamin yelled at Plaintiff: "put it down, put it down."

48.     While continuing to hold Plaintiff at gun point, Major Boomershine demanded that Plaintiff sit down or he would take Plaintiff to jail.

49.     Concerned that he may be injured by Major Boomershine, Plaintiff sat down with his arms raised and again identified himself as a police officer.

50.     Deputy Chief Benjamin handed Plaintiff's official ISP identification to Major Boomershine.

51.     Major Boomershine instructed an unidentified IMPD officer to determine whether Plaintiff was a "real state police officer."

7

52.     Major Boomershine handed Plaintiff's official ISP identification to Sgt. Stamper.

53.     To Plaintiff's best knowledge and belief, Sgt. Stamper returned to his office to call ISP headquarters.

54.     For the fourth time, Plaintiff identified himself as a state police officer and requested that IMPD contact his supervisor.

55.     Major Boomershine requested handcuffs to place on Plaintiff.

56.     Deputy Chief Benjamin asked if Plaintiff was armed.

57.     As Plaintiff told them that he was armed, Plaintiff carefully lifted his shirt to show them his holstered ISP duty-issued handgun.  Plaintiff identified himself as a state police officer for a fifth time.

58.     Deputy Chief Benjamin stated: "Don't get killed in here," as an unidentified IMPD officer removed Plaintiff's gun from its holster.

59.     Plaintiff again requested that IMPD contact his supervisor.

60.     Deputy Chief Benjamin demanded Plaintiff stand and turn around.

61.     As Plaintiff began to stand, Deputy Chief Benjamin grabbed Plaintiff lifting him and shoving him against the wall.

62.     Deputy Chief Benjamin and other IMPD personnel forcibly handcuffed Plaintiff, at which time one of the IMPD officers threatened to break Plaintiff's arm if he failed to cooperate.

63.     Plaintiff identified himself as a police officer for the sixth time and requested, for a third time, that IMPD contact his supervisor.

64.     IMPD personnel forced Plaintiff to sit back down in a chair.

65.     Using profanity, Deputy Chief Benjamin repeatedly claimed that he did not know Plaintiff.

66.      Having already instructed a staff member to contact Plaintiff's supervisor, Deputy Chief Benjamin again asked Plaintiff for his supervisor's name, which he provided once again.

67.     IMPD personnel asked for Plaintiff's identification, to which Plaintiff responded that his identification had already been taken from him by IMPD personnel.

68.     Major Boomershine told Plaintiff that he should not "come up here and punk us" and that Plaintiff "about got shot."

69.     Deputy Chief Benjamin told Plaintiff that he almost got killed.

70.     Major Boomershine informed Plaintiff that he "got lucky" because Major Boomershine was "two seconds away from putting one in [his] pumpkin."

71.     Deputy Chief Benjamin instructed Major Boomershine to remove Plaintiff and take him to an IMPD interview room.

72.     Deputy Chief Benjamin, Major Boomershine and Sgt. Stamper forced Plaintiff, still handcuffed, through IMPD offices past numerous IMPD personnel, to an interview room.

73.     Plaintiff asked to make a phone call, but they refused his request.

74.     Upon arriving in the interview room, Deputy Chief Benjamin and other IMPD personnel began searching Plaintiff's person and seizing his personal property.

75.     During the search, Plaintiff informed Deputy Chief Benjamin and IMPD personnel that there was recorder in his pocket.

76.     In response, Deputy Chief Benjamin became enraged, accusing Plaintiff of "setting him up."

9

77. Deputy Chief Benjamin demanded Plaintiff sit down or that they "will put [him] down."

78. Plaintiff asked to speak with "the Chief," to which Deputy Chief Benjamin responded: "You're looking at him."

79. Notwithstanding that Plaintiff previously identified himself as a state trooper six times and requested that they contact his supervisor, Major Boomershine questioned Plaintiff as to whether he was a state trooper.

80. For a seventh time, Plaintiff identified himself as a state trooper and requested for a fourth time that IMPD contact his supervisor.

81. Sgt. Stamper stated that Major Boomershine should contact Major Larry Turner because ISP Superintendent Paul Whitesell was busy.

82. While Plaintiff was left handcuffed and locked in the interview room, Deputy Chief Benjamin asked Sgt. Stamper whether Plaintiff's identification was legitimate. Sgt. Stamper replied: "According to Larry [Major Turner], yeah, he's on."

83. With full and complete knowledge that Plaintiff was an Indiana State Trooper, IMPD continued to maintain custody of Plaintiff.

84. Major Boomershine called Major Turner, confirmed yet again that Plaintiff was an ISP detective, and informed Major Turner that Plaintiff was handcuffed in an IMPD interview room.

85. Major Boomershine then lied to Major Turner by falsely stating that Plaintiff refused to identify himself as an ISP trooper after multiple requests.

86. Major Boomershine admitted to Major Turner that he had placed Plaintiff in an arm-bar.

87. Major Boomershine spoke into the digital recorder, stating the date and time, and that IMPD had Plaintiff "in custody." He then turned off the digital recorder.

88. IMPD held Plaintiff in custody for approximately one (1) hour until Major Turner, ISP Captain Michael Snyder and ISP Lieutenant Michael Campbell (hereinafter "ISP personnel" collectively) arrived.

89. While being held in custody, Plaintiff requested that the handcuffs be removed because they were too tight and were causing pain.

90. Sgt. Stamper removed the right handcuff and connected the right cuff to the interview room wall.

91. Upon arrival, Major Turner spoke to Plaintiff as he was chained to the wall.

92. ISP personnel met with IMPD personnel, after which Deputy Chief Benjamin released Plaintiff to Major Turner.

93. IMPD personnel returned Plaintiff's property to him, but Major Turner took possession of the recorder.

94. On August 19, 2010, Deputy Chief Benjamin spoke with Indiana State Trooper Joseph Dixon (hereinafter "Trooper Dixon"), with whom he had a 27-year friendship, about the incident with Plaintiff.

95. Deputy Chief Benjamin falsely told Trooper Dixon that: 1) Plaintiff was agitated and "breathing heavy" when Plaintiff came into his office; 2) Plaintiff played back the voicemail recordings to him while in his office; 3) after Plaintiff showed his identification, which Deputy

Chief Benjamin said looked fake, Plaintiff opened his jacket to show his gun and then reached for the gun; 4) Deputy Chief reached for Plaintiff's gun also, put his hands over Plaintiff's hands, took Plaintiff down to the floor, and wrestled for the gun; 5) IMPD then got Plaintiff under control when Major Boomershine "drew down" on Plaintiff; 6) IMPD personnel handcuffed Plaintiff and put him back with "the rest of the criminals."

96.    The media reported this incident on and after August 17, 2010.

97.    Plaintiff has been told by family and friends information about the incident they learned from the Defendants that is inaccurate and false.

## CAUSES OF ACTION
### 42 U.S.C. §1983

98.    Plaintiff incorporates by reference the preceding rhetorical paragraphs numbered 1-97 above, as if fully restated herein.

99.    Defendants, individually and collectively, acting under the color of state law and utilizing their authority to falsely arrest, assault, batter, abuse process and criminally confine Plaintiff, deprived Plaintiff of his Federally-protected Constitutional rights.

100.    Defendants, including but not limited to: Chief Deputy Benjamin, Major Boomershine and Sgt. Stamper, acted maliciously, willfully, wantonly and with ill-will, evil motive and callous disregard of Plaintiff's known Constitutional rights and thereby outside of their scope of employment, subjecting them to assessment of punitive damages.

101.    IMPD maintains a policy and/or custom of deliberate and reckless indifference, acquiescence to, ratification and negligent supervision of its law enforcement officers' misconduct, misuse and abuse of authority for personal gain, and disregard for legal process and application of law to themselves.

102. Deputy Chief Benjamin had the authority to intervene at any point to stop the unlawful actions that were being taken against the Plaintiff by himself and his subordinates, but refused to do so.

103. Deputy Chief Benjamin establishes policy, standard operating procedure and/or custom for IMPD.

104. Chief Ciesielski negligently failed to prevent or rectify, or thereafter approved and ratified any and all unlawful actions of Deputy Chief Benjamin, Major Boomershine, Sgt. Stamper and other IMPD personnel, officers, staff and employees that occurred during the course of the false arrest, false imprisonment, assault, battery, abuse of process and criminal confinement of Plaintiff.

105. Chief Ciesielski establishes policy, standard operating procedure and/or custom for IMPD.

106. As a direct result of the foregoing policy and/or custom of IMPD, Plaintiff was deprived of his Federally-protected Constitutional rights under the Constitution of the United States of America and 42 U.S.C. § 1983.

107. Due to the egregious violations of his federally-protected constitutional rights under the Constitution of the United States of America and 42 U.S.C. § 1983 by Defendants, individually and collectively, Plaintiff has suffered damages, including, but not limited to damages for: humiliation, significant inconvenience, embarrassment, disparagement to his professional and personal reputations, loss of time and liberty, pain and suffering, and costs and attorney's fees for this action.

WHEREFORE, Plaintiff, by counsel, respectfully requests this Court award him judgment against Defendants, individually and collectively, for compensatory and punitive damages, reasonable attorney's fees pursuant to 42 U.S.C. §1988, and all other relief just and proper in the premises.

### False Arrest/False Imprisonment

108.    Plaintiff incorporates by reference the proceeding rhetorical paragraphs numbered 1 through 107 above, as if fully restated herein.

109.    On August 17, 2010, Plaintiff was falsely arrested and falsely imprisoned by IMPD personnel, including but not limited to: Deputy Chief Benjamin, Major Boomershine and Sgt. Stamper.

110.    Plaintiff's false imprisonment was unreasonably prolonged.

111.    Deputy Chief Benjamin, Major Boomershine and Sgt. Stamper maliciously, willfully, wantonly and with ill-will, evil motive and callous disregard for known Constitutional rights falsely arrested Plaintiff.

112.    IMPD personnel, including but not limited to: Deputy Chief Benjamin, Major Boomershine, and Sgt. Stamper, maliciously, willfully, wantonly and with ill-will, evil motive and callous disregard for known Constitutional rights falsely imprisoned Plaintiff.

113.    IMPD personnel, including but not limited to: Deputy Chief Benjamin, Major Boomershine, and Sgt. Stamper, maliciously, willfully, wantonly and with ill-will, evil motive and callous disregard for known Constitutional rights unreasonably prolonged Plaintiff's false imprisonment.

114.    During the time Defendants falsely arrested and falsely imprisoned Plaintiff, IMPD personnel, including but not limited to: Deputy Chief Benjamin, Major Boomershine, and Sgt. Stamper, obtained Plaintiff's official ISP identification and confirmed otherwise that Plaintiff was an ISP detective.

115.    Due to the fact that the Defendants, individually or in concert, falsely arrested, falsely imprisoned, and unreasonably prolonged Plaintiff's false imprisonment, Plaintiff has suffered damages, including but not limited to damages for: humiliation, significant inconvenience, embarrassment,  disparagement to his professional and personal reputations, loss of time and liberty, pain and suffering, and costs and attorney's fees for this action.

WHEREFORE, Plaintiff, by counsel, respectfully requests this Court award him judgment against Defendants, individually and collectively, for compensatory and punitive damages, costs of this action, and all other relief just and proper in the premises.

### Assault and Battery

116.    Plaintiff incorporates by reference the preceding rhetorical paragraphs numbered 1 through 115, as if fully restated herein.

117.    During the time Defendants falsely arrested and falsely imprisoned Plaintiff, IMPD personnel, including but not limited to: Deputy Chief Benjamin, Major Boomershine, and Sgt. Stamper, threatened to break his arm, shoot him, uttered profanities at him, and used excessive physical force against him.

118.    By way of threatening Plaintiff's life and use of excessive physical force, IMPD personnel, including but not limited to: Deputy Chief Benjamin, Major Boomershine, and Sgt. Stamper, intentionally caused apprehension of contact in Plaintiff.

119.   By use of excessive physical force, IMPD personnel, including but not limited to: Deputy Chief Benjamin, Major Boomershine, and Sgt. Stamper, intentionally caused offensive and harmful contact to Plaintiff.

120.   IMPD personnel, including but not limited to: Deputy Chief Benjamin, Major Boomershine, and Sgt. Stamper, maliciously, willfully, wantonly and with ill-will, evil motive and callous disregard for known Constitutional rights, assaulted and battered Plaintiff.

121.   Due to the fact that the Defendants, individually or in concert, by use of threats to his life, physical injury and actual use of excessive physical force, assaulted and battered Plaintiff, Plaintiff has suffered damages, including, but not limited to damages for: humiliation, embarrassment, disparagement to his professional and personal reputations, loss of time and liberty, pain and suffering, significant inconvenience, and costs and attorney's fees for this action.

WHEREFORE, Plaintiff, by counsel, respectfully requests this Court award him judgment against Defendants, individually and collectively, for compensatory and punitive damages, costs of this action, and all other relief just and proper in the premises.

### Recovery under Indiana Code §34-24-3-1 due to Criminal Confinement

122.   Plaintiff incorporates by reference the preceding rhetorical paragraphs numbered 1-121 above, as if fully restated herein.

123.   IMPD personnel, including but not limited to: Chief Deputy Benjamin, Major Boomershine and Sgt. Stamper, knowingly and intentionally, confined Plaintiff without Plaintiff's consent.

124.   IMPD personnel, including but not limited to: Chief Deputy Benjamin, Major Boomershine and Sgt. Stamper, knowingly and intentionally, physically and by way of threat and intimidation, forced Plaintiff from one (1) place to another.

125.   IMPD personnel, including but not limited to: Deputy Chief Benjamin, Major Boomershine, and Sgt. Stamper, maliciously, willfully, wantonly and with ill-will, evil motive and callous disregard for known Constitutional rights, criminally confined Plaintiff.

126.   Due to the fact that Defendants, individually or collectively, criminally confined Plaintiff, Plaintiff suffered damages, including but not limited to, damages for: humiliation, significant inconvenience, embarrassment, damage to his professional and personal reputations, loss of time and liberty and pain and suffering.

127.   Pursuant to I.C. 34-24-3-1, Plaintiff is entitled to recover against IMPD personnel, including but not limited to: Chief Deputy Benjamin, Major Boomershine and Sgt. Stamper, treble damages and costs and attorney's fees for this action.

WHEREFORE, Plaintiff, by counsel, respectfully requests, this Court award him judgment against Defendants, individually and collectively, for compensatory and treble or punitive damages, costs of this action, and all other relief just and proper in the premises.

### Abuse of Process

128.   Plaintiff incorporates by reference the preceding rhetorical paragraphs numbered 1 - 127, as if fully restated herein.

129.   IMPD personnel, including but not limited to: Deputy Chief Benjamin, Major Boomershine, and Sgt. Stamper, maliciously, willfully, wantonly and with ill-will, evil motive and callous disregard for known Constitutional rights of Plaintiff abused process against Plaintiff.

130.    IMPD personnel, including but not limited to: Deputy Chief Benjamin, Major Boomershine, and Sgt. Stamper, were driven to abuse process by the ulterior purpose of retribution against Plaintiff.

131.    Due to the fact that the Defendants, individually or in concert, abused process, Plaintiff has suffered damages, including, but not limited to, damages for: humiliation, significant inconvenience, embarrassment, damage to his professional and personal reputations, loss of time and liberty, pain and suffering, and costs and attorney's fees for this action.

WHEREFORE, Plaintiff, by counsel, respectfully requests, this Court award him judgment against Defendants, individually and collectively, for compensatory and punitive damages, costs of this action, and all other relief just and proper in the premises.

Respectfully submitted,

CAMPBELL KYLE PROFFITT LLP


By: _____
        Michael A. Casati, #16329-49
        William E. Wendling, Jr., #2004-49
        N. Scott Smith, #25389-49
        CAMPBELL KYLE PROFFITT LLP
        One Penn Mark
        11595 N. Meridian St., Suite 701
        Carmel, IN 46032
        Telephone: (317) 846-6514
        Fax: (317) 846-6514
        Email: mcasati@ckplaw.com
        E-mail: wwendling@ckplaw.com
        E-mail: ssmith@ckplaw.com
        Alternate E-mail:  ahaworth@ckplaw.com

**Attorneys for Plaintiff**

## Demand for Jury Trial

Comes now the Plaintiff, Wayne E. Billings, by counsel, and respectfully requests,

pursuant to Federal Rules of Trial Procedure Rule 38, that this cause and the issues raised by

Plaintiff's Complaint be tried before a jury.

Respectfully submitted,

CAMPBELL KYLE PROFFITT LLP


By:_____

Michael A. Casati, #16329-49
William E. Wendling, Jr., #2004-49
N. Scott Smith, #25389-49
CAMPBELL KYLE PROFFITT LLP
One Penn Mark
11595 N. Meridian St., Suite 701
Carmel, IN 46032
Telephone: (317) 846-6514
Fax: (317) 846-6514
Email: mcasati@ckplaw.com
E-mail: wwendling@ckplaw.com
E-mail: ssmith@ckplaw.com
Alternate E-mail: ahaworth@ckplaw.com

*Attorneys for Plaintiff*